IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICHARD J. KELLY
and STELLA KELLY,

             Plaintiffs,

vs.                                  CIVIL NO.  02-250 LH/LFG

ADVANTA CORPORATION,
FLEETBOSTON FINANCIAL
CORPORATION, ASSET
ACCEPTANCE CORPORATION,
FINANCIAL CREDIT CORPORATION,
PHILLIPS AND COHEN ASSOCIATES,
ADAM S. COHEN,

             Defendants,

     and

THE LAW OFFICES OF D. SCOTT
CARRUTHERS and D. SCOTT
CARRUTHERS, ESQ.,

             Defendants/Cross-Claimants,

vs.

ADVANTA CORPORATION, ASSET
ACCEPTANCE CORPORATION,
FINANCIAL CREDIT CORPORATION,
FLEET CREDIT CARD SERVICES and
ROES 1-50,

             Cross-Defendants.

**MEMORANDUM OPINION AND ORDER
ON PLAINTIFFS' MOTIONS TO COMPEL
DISCOVERY REQUESTS FROM DEFENDANTS**

Before the Court are several motions to compel filed by Plaintiffs Richard J. and Stella Kelly

("Kellys").  Kellys seek to compel various Defendants to answer discovery requests previously

served.  This opinion encompasses Kellys' Motion to Compel Answers to Discovery Requests from Defendant Phillips and Cohen Associates, Ltd. [Doc. #66]; Motion to Compel Answers to Discovery Requests from Defendant Asset Acceptance Corporation [Doc. #73]; Motion to Compel Answers to Discovery Requests from Defendant Advanta Corporation [Doc. #75]; and Motion to Compel Answers to Discovery Requests from Defendant Fleet Credit Card Services [Doc. #77].  Oral argument is not necessary.  This matter may be resolved based on the parties' submissions.

## Background

This lawsuit relates to the processing, administration and management of alleged debts along with related collection efforts.  Kellys filed a 38-page complaint [Doc. 1] asserting request for injunctive relief, intentional infliction of emotional distress, defamation, *prima facie* tort, invasion of privacy, holding up to false light, violations of the New Mexico Unfair Trade Practices Act, violations of the Fair Credit Reporting Act, violations of the Fair Debt Collection Practices Act, and seeking both punitive damages and attorney fees.

Kellys filed discovery requests on all Defendants.  Defendants responded by answering some of the discovery requests and objecting to others.  The present motions involve Kellys' efforts to compel responses or more complete responses to those discovery requests.

## Analysis of Changing Discovery Rules

Kellys argue that discovery in federal court is broad and sweeping, and, therefore, the requests served need not be limited to issues raised by the pleadings.  *See, e.g.*, Doc. 67, p. 4; Doc. 74, p. 2; Doc. 76, p. 2; and Doc. 78, p. 2.  Kellys' argument was at one time correct.  Federal courts followed a broad and liberal discovery approach, Hickman v. Taylor, 329 U.S. 495, 507, 67 S. Ct. 385 (1947), and federal procedural rules were broadly construed.  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 3551, 98 S. Ct. 2380 (1978)(relying on Hickman, 329 U.S. at 501).

2

However, such broad, *carte blanche* discovery lead to significant abuses.  Rather than properly utilizing formal discovery as an effective way of learning about evidence that would support or refute claims or defenses, discovery became a litigation club often used in an attempt to beat one's opponent into submission.  As there were no limits on interrogatories, attorneys who wished to gain a tactical advantage could drive up the opponent's litigation costs, and in so doing, force an opponent to settle rather than litigate.  Wave after wave of broad and sweeping interrogatories with multiple subparts became commonplace.  This excessive discovery soon became the norm.  So, too, with document requests.  Unlimited, broad discovery became a means of harassing one's opponent by making unreasonable, albeit authorized, demands for any kind of document, record or compilation imaginable.  The unstated intent of written discovery was to bury an opponent under an avalanche of paper.

Similarly, with no limitations on the numbers of depositions that could be noticed or the length of the depositions, parties threatened to take or took the deposition of anyone who had any information on the case, regardless of how slight, and depositions could proceed not just for hours, but for days.  These abusive discovery practices resulted in substantial motion practice as well, with the demanding party never satisfied with the responses to the formal discovery served.  The net result was that costs of litigation skyrocketed; delays in achieving an ultimate disposition of a case were commonplace; and federal court dockets became overburdened with discovery battles.

In describing the situation which developed in the nation's federal courts, the First Circuit Court of Appeals stated:

> The introduction of expensive pretrial discovery, Fed. R. Civ. P. 26-36, accelerated and enhanced this transmogrification.  As lawyers became more adept at utilizing the liberalized rules, litigation became larger and more intricate:  the joinder rules stimulated growth in the size and complexity of cases by the addition of parties and claims, and

> the discovery rules stimulated growth in the size and complexity of cases by multiplying the opportunities for pretrial work per party and per claim. Paper manufacturers sang hosannas.
>
> The combined effect of those changes was explosive. Lawsuits became increasingly more complicated, and the preparatory phases of those ever more complex actions took on a nightmarish quality: discovery swelled to unwieldy proportions in case after case, and often became prohibitively expensive.

San Juan Dupont Plaza Hotel Fire Litigation, 859 F.2d 1007 at 1010 (1st Cir. 1988).

Ultimately, Congress mandated that these abuses come to an end. In 1990, Congress enacted the Civil Justice Reform Act, 28 U.S.C. § 471 *et seq.* ("CJRA"). This legislation was intended to expedite the ultimate disposition of litigation and to lessen the financial burdens caused by delay. The CJRA's legislative history states in relevant part:

> The purpose of this legislation is to promote for all citizens--rich or poor, individuals or corporation, plaintiff or defendant--the just, speedy, and inexpensive resolution of civil disputes in our Nation's federal courts.

Pub. L. 101-650, 1990 U.S. Code Congressional and Administrative News, p. 6804.

The changes brought about by the adoption of the CJRA were historic and sweeping. Due to significant delays in the management and disposition of civil litigation in the federal courts, and especially due to the skyrocketing litigation costs caused by abuses in the discovery process, the CJRA shifted case management responsibilities to courts as a critical step in reducing these problems. *See* Foxley Cattle Co. v. Grain Dealer Mut. Ins. Co., 142 F.R.D. 677, 681-82 (S.D. Iowa 1992).

Under the CJRA, courts were to implement innovative strategies for reducing costs and delays in civil litigation. *See* 28 U.S.C. § 471 (1994). The CJRA states:

> There shall implemented by each United States District Court . . . a civil justice expense and delay reduction plan . . . . The purposes of each plan are to facilitate deliberate adjudication of civil cases on the

4

merits, monitor discovery, improve litigation management, and ensure
just, speedy and inexpensive resolution of civil disputes.

To implement the goals of the CJRA, the Federal Rules of Civil Procedure were amended in 1993, and again most recently in 2000, to ensure that the CJRA's important goals could be achieved by strict judicial management of cases. Indeed, Rule 1 of the civil rules tracks the CJRA's legislative purpose. Rule 1 provides, "They [procedural rules] shall be construed and administered to secure the just, speedy and inexpensive determination of every action." By adopting this language, it was clear that the intent was to dovetail the civil procedural rules to put into effect the two-pronged goals of the CJRA: (1) to expedite the ultimate disposition of litigation; and (2) to reduce the costs of litigation.

The 1993 and 2000 amendments to the CJRA were intended to narrow the scope of discovery and to place significant limits on the previous free-wheeling, unlimited discovery which contributed to the near-crisis situation in the nation's federal courts in civil cases. Limitations were placed on the numbers of interrogatories that could be served, including subparts, Fed. R. Civ. P. 33(a); so, too, the numbers of depositions that could be taken were restricted, Fed. R. Civ. P. 30(a)(2); and limitations were imposed on the length of depositions, Fed. R. Civ. P. 30(d)(2). Parties were now required to submit proposed discovery plans to the court for the court's approval. Fed. R. Civ. P. 26. Once a deposition was taken, a party could not be re-deposed without leave of court. Fed. R. Civ. P. 30(a)(2)(B).

Courts were to adopt strict case management procedures to ensure that cases move efficiently, expeditiously and economically through the litigation process. 28 U.S.C. § 471 *et seq.* In response to Congress' mandate, New Mexico adopted its own Civil Justice Expense and Delay Reduction Plan ("Plan") and amended its civil local rules to work hand in glove with the goals of the CJRA.

The district's Plan requires that judges oversee the discovery process and ensure that discovery is being utilized for a proper purpose, and that appropriate limitations are imposed to ensure that a balance is struck between the rights of a party to obtain information relevant to the claims and defenses and the opposing party's right to be free from intrusive, burdensome and inappropriate discovery. Fed. R. Civ. P. 26.

The effect on discovery occasioned by the CJRA, the Plan and the revised rules of procedure was monumental. The Advisory Committee Notes to Rule 26 indicate that changes from the broad, liberal discovery rules to a narrative approach signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, as well as signaling to the parties that they have no entitlement to discovery for purposes of developing new claims or defenses not already identified in the pleadings. Rule 26 now vests the court with broad discretion to narrowly tailor discovery and to dictate the sequence of discovery so as to accomplish the goals of cost reduction and expeditious case handling.

In balancing one party's right to discovery with the opposing party's right to be free from intrusive and burdensome discovery, the court looks at the requester's need for the information from this particular source; the relevance of the requested information to the litigation; the burden of producing the sought-after material; and the harm or difficulty which may be caused to the party seeking to limit discovery or to protect information. A court may deny the requests altogether, limit the conditions, time, place or topics of discovery, or limit the manner in which discoverable information will be disclosed. Koch v. Koch Industries, Inc., 203 F.3d 1202, 1238 (10th Cir.), *cert. denied*, 531 U.S. 926 (2000); Burka v. U.S. Dept. of Health and Human Services, 87 F.3d 508, 517 (D. C. Cir. 1996). It is with these general principles in mind that the Court considers the pending motions.

## Present Motions

Kellys' discovery demands, Docs. 66, 73, 75 and 77, are broad and sweeping.  In many instances, information sought goes far and above any issue relevant in this case.  Moreover, the tenor of Kellys' motions is remarkable both for their accusatory nature and attacks on Defendants and counsel.[1]   The accusations levied against opposing parties and defense counsel are multiplied and repeated in motion after motion in an apparent belief that if they emphasize and re-emphasize their indignation and demands for sanctions often enough, sanctions will be imposed.  Indeed, in the combined motions, Kellys made no less than 52 separate requests that the Court impose sanctions on Defendants.[2]   Arguments that emit more heat than light do not serve to illuminate the issues in dispute.

## Motion to Compel From Phillips & Cohen Associates, Ltd. - Doc. 66

The dispute in this motion includes Interrogatory Nos. 2, 3, 4, 7, 8, 9 and Request for

---

[1]Kellys advise the Court that Defendants are evasive [Doc. 67, memo, p. 1]; that they have engaged in "willful disregard of Plaintiffs' rights" [Doc. 74, memo, pp. 2 and 5]; they contend that Defendants have failed to cooperate [Doc. 74, memo, p. 4]; of providing answers that are "cursory and evasive" [Doc. 74, memo, p. 5]; of imposing "roadblocks to Plaintiffs' legitimate discovery requests" [Doc. 76, memo, p. 5]; of being "a model of confusion" [Doc. 76, memo, p. 6]; of "sandbagging" the discovery process [Doc. 76, memo, p. 7]; of "attempting to hide the truth" [Doc. 76, memo, p. 8]; of "willful disregard" of the discovery process [Doc. 76, memo, p. 8]; of "shirking obligations" [Doc. 76, memo, p. 11]; casting "a blind eye to Plaintiffs' grievances" [Doc. 101, reply, p. 3]; "evading their duty" [Doc. 67, memo, p. 2]; making misrepresentations [Doc. 101, reply, p. 2]; of "spurious conduct" [Doc. 101, reply, p. 2]; of "misreading law" [Doc. 101, reply, p. 4]; making false implications [Doc. 101, reply, p. 4]; of being "disingenuous" [Doc. 101, reply, p. 7]; of lacking in candor, i.e., "Defendant Advanta here claims complete lack of knowledge of its prior actions, when in fact what is lacking in its responses is accuracy and diligence" [Doc. 106, reply, p. 4]; of making "deliberate errors" [Doc. 106, reply, p. 4]; of engaging in "spurious conjecture" [Doc. 106, reply, p. 7]; of providing "skimpy answers"  [Doc. 106, reply, p. 8]; of furnishing "mysterious records" [Doc. 106, reply, p. 9]; and "improperly testifying" through its counsel [Doc. 104, reply, p. 7].

[2]*See, e.g.*, Doc. 74, memorandum, sanctions demands on pp. 1, 3, 4, 5, 6, and 8.  *See also* reply to same motion, Doc. 108, sanctions demand, pp. 3, 4, 5 (two demands), 6, 7, and 8; *See* Doc. 76, memorandum, pp. 1, 3, 4, 5, 6, 7, 8 (two demands), 9, 10, 11 (two demands), 12 and 13; *see also* Doc. 78, memorandum, pp. 3, 7, 8, 9, 11, 12 (two demands), 13 (two demands); *see also* Doc. 104, reply, pp. 4, 5, 6 (two demands), 7, 8 and 9.

Production No. 5 served on Phillips & Cohen Associates, Ltd. ("Phillips"), a law firm.

Kellys' complaint on page 21 indicates that Adam Cohen, with Phillips, was the attorney and the law firm to whom Kellys' account was referred for collection. In their complaint, Kellys contend that Phillips sent a letter to Kellys requesting full payment in an amount of $15,416.96.

In their answer, Phillips acknowledge that Mr. Cohen is an attorney and that he and the law firm sent the letter identified in paragraph 105 of the complaint. Defendants also acknowledge that on October 5, 2001, a credit report from Experian listed a $15,460 charge-off originating with Fleet Credit CC, and that the report noted that the creditor stated the account was purchased by another lender. They state that no lawsuit was ever filed and that their only actions *vis a vis* the Kellys was to send the one letter.

In Interrogatory No. 2, Kellys seek the name, address and employment responsibilities of all the law firm's supervisors, employees, contractors or agents who participated in any way with the acquisition of the account, the assumption of collection responsibilities, and the collection efforts for Kellys' account. The interrogatory further requests a list of each task each employee performed, and seeks the date on which each task was performed.

In response, Phillips answered that the only employee who worked on the account was Steve Stern. Phillips disclosed the identity of the employees who worked on the account, Mr. Stern and Mr. Cohen, and produced all of its records relating to this account as part of the Rule 26 disclosures. The Court sees no relevance in providing addresses of supervisors, employees, contractors or agents, or requiring parties to disclose "each and every task performed" or "any and all actions taken." Courts have held that phrases such as "any and all" and "each and every" used in interrogatories are improper as being overly broad, vague and ambiguous on their face. Horizon Holdings, L.L.C. v. Genmar Holdings, Inc., 209 F.R.D. 208, 215 (D. Kan. 2002); IBP, Inc. v. Mercantile Bank of

Topeka, 179 F.R.D. 316, 321 (D. Kan. 1998).

When a request is overly broad, as it is in this case, a requesting party runs the risk that the court will order no further information produced. *See* Mackey v. IBP, Inc., 167 F.R.D. 186, 197-98 (D. Kan. 1996). Such is the case here. The Court finds no relevance in requiring production of the information requested by Kellys and determines that the objections were well-taken. No further response to this interrogatory is necessary.

In Interrogatory No. 3, Kellys request a detailed description concerning the number of clients or accounts on which the law firm is asked to collect, and requires disclosure of five categories of referrals. It also requests information concerning the law firm's gross income, how its income is obtained and fee agreements with clients.

None of this information is relevant to the claim. Even if, for example, financial information was deemed relevant for purposes of a punitive award, information on the financial ability of a defendant to respond in damages is based on their current net worth. The law firm's revenues, fee agreements with clients, numbers of cases, etc. is totally irrelevant. *See* The Cincinnati Insurance Co. v. Clark, 1992 WL 34128 at *2 (E.D. Pa. Feb. 19, 1992)(pertinent issue is the defendant's net worth now, not five years ago); Aerotech Resources, Inc. v. Dodson Aviation, Inc., 2001 WL 395397 at *2 (D. Kan. 2001).

The Court sustains the objection and determines that Kellys' request for information constitutes overreaching, and that the requested information is not relevant to the claims and defenses under Rule 26. To the extent the law firm's financial information is even arguably relevant, on balance, the scales should tip in favor of non-disclosure because the burdens, difficulty, expense and privacy interests of Defendant far outweigh Kellys' claimed need to obtain that information.

In Interrogatory No. 4, Kellys sought information in detail, "Under what circumstances you initiate litigation, in the ordinary course of business, for each of the different categories of accounts set out in Interrogatory No. 3(1), when a creditor ignores your collection efforts, specifying in each instance and for each category the jurisdiction in which you would initiate litigation."

Phillips objected to the interrogatory as being vague, general, overly broad and seeking irrelevant information and information not calculated to lead to discovery. Additionally, Phillips stated that litigation is pursued against a debtor on a case-by-case basis, and that there have been five instances in which litigation was pursued against a debtor in the past. Phillips responded that litigation is pursued at the discretion of the debt owner, and that at no time was litigation initiated against the Kellys by Phillips. It finally responded that it does not maintain records pertaining to prior initiated litigation.

The Court determines that the response was appropriate and no further response is necessary. As before, Kellys requests for information were broad, sweeping, and almost totally irrelevant.

In Interrogatory No. 7, Kellys seek detailed information concerning all actions taken when Defendants were informed by Kellys and or their attorney that Kellys did not owe any money. Kellys also seek information of why collection efforts ceased and what communications were made to Fleet or any other person or entity at any other time after being advised that Kellys did not owe money.

In response, Phillips stated that on October 5, 2000, Kellys' attorney requested statement information on this account and that Phillips faxed the information to Kellys' attorney on November 1, 2000. Further, on November 10, 2000, Phillips acknowledges receipt of a letter from Kellys' attorney threatening suit and that the account was closed and the file was returned to its client on November 14, 2000. Phillips states that the entire scope of its collection activity between it and Kellys consisted of the one letter acknowledged in its answer to the complaint.

The Court determines that Phillips' answers were appropriate and its objections are well-taken.  Phillips need not answer anything further regarding Interrogatory No. 7.

Interrogatory No. 8 requests specific information concerning Phillips' records and/or file retention policy; all actions it took leading to the destruction or disposal of records; when any records touching on the Kellys' account were destroyed; and requested information on destroyed records, including date and reasons for destruction.  In response, Phillips contends that it maintains records through the collector notes which are created in the regular course of business, and that these records were already provided to Kellys as part of Phillips' Rule 26 disclosures.  It further states that it did not maintain the collection letter that was sent to Kellys, and that the few form letters that are sent to debtors were already provided as part of its initial disclosures.

The Court determines that Phillips appropriately answered and that no further answers are required.  Details concerning a record retention policy are not relevant and the broad, sweeping demands requested of Phillips have little value, if any, in determining the facts relevant to the claims and defenses.  The Court sustains the objection.

Interrogatory No. 9 is a contention interrogatory.  While contention interrogatories are appropriate in discovery, they are not appropriate at the commencement of discovery, but only at its close.  Fed. R. Civ. P. 33(c); Fischer and Porter Co. v. Tolson, 143 F.R.D. 93, 95 (E.D. Pa. 1992).  The Court determines that Interrogatory No. 9 is a contention interrogatory improperly served at the commencement of discovery and does not require Phillips to answer it at this time.  Defendants, however, are required to supplement appropriate responses to interrogatories, and, therefore, at the close of discovery, contention interrogatories, to the extent they are not objectionable, should be answered.

In Request for Production No. 5, Kellys require contractual agreements between Phillips and Fleet setting out terms of collections efforts on behalf of Fleet, as well as Phillips' compensation under the agreement and compensation for the Kellys' account.

The Court sustains the objection.  Terms and conditions of an attorney retention agreement do not appear relevant to any claim or defense under Rule 26.  In balancing the Kellys' right of discovery with Phillips' right to be free from intrusive and burdensome discovery, the Court determines that the scale should tilt in favor of Phillips.  Koch v. Koch Industries, Inc.; Burka v. U.S. Dept. of Health and Human Services.

The discovery requests served on Phillips and Cohen fall into the category of cases described by the First Circuit in the Dupont Plaza Hotel case.  Thus, the Court sustains all of Phillips' objections to Motion to Compel, Doc. 66.

**Motion to Compel From Defendant Asset Acceptance Corporation - Doc. 73**

In Interrogatory No. 2, Kellys requests in detail "all disclosures Fleet made to you and/or Financial Credit Corporation ("Financial Credit") concerning the Kelly account, and all inquiries you and/or Financial Credit made to Fleet concerning the Kelly account, prior to Asset Acceptance's and/or Financial Credit becoming successor-in-interest to Fleet."

Asset Acceptance Corporation ("Asset Acceptance") objected to the discovery, stating it was broad, burdensome and sought information that was not relevant and had no bearing on the claims. However, it provided no other response to the discovery request.

Here, unlike the prior motion, the Court determines that information provided to Asset Acceptance by Fleet and/or Financial Credit concerning this account may be relevant to the claims and defenses.  Thus, the Court overrules Asset Acceptance's objection and orders that Asset Acceptance disclose information made available to it either by Fleet or Financial Credit concerning

this account.

In Interrogatory No. 3, Kellys request information in detail concerning the relationship between Asset Acceptance and Financial Credit and request the names and addresses of all officers and all board members.

The Court sustains the objection in part. The names and addresses of Asset Acceptance's officers, directors and board members are simply not relevant. Absolutely nothing in the complaint rises to the level of or even intimates that Kellys' claims could somehow "pierce the corporate veil." This is the kind of information that simply should not have been sought in the discovery request. However, the relationship between Asset Acceptance and Financial Credit may well be relevant. If, for example, one entity purchased accounts from another, that information should be disclosed. Thus, the Court will require Asset Acceptance to disclose and explain its relationship to Financial Credit.

In Interrogatory No. 4, Kellys request information in detail which Financial Credit disclosed to D. Scott Carruthers or D. Scott Carruthers Law Firm before or at the time he was asked to collect on the Kellys' account, and all inquiries which Mr. Carruthers or his firm made to Asset Acceptance before accepting the account for collection.

In response, Asset Acceptance simply objected, stating that the request is over broad, burdensome and sought information not relevant. It also objected claiming confidentiality, but failed to submit any type of privilege log.

All communications between a client and counsel are not privileged, but only those in which the parties had an expectation of privacy. *See* United States v. Pelullo, 5 F. Supp. 2d 235, 239 (D.N.J. 1998)(inmates tape of conversations with attorney while in prison not protected).

Here, factual information is not privileged. That is, what information was provided to Mr. Carruthers as well as the requests made of him would not fall into the privileged arena. The Court

will require Asset Acceptance to answer this interrogatory by providing non-privileged information, and to the extent it seeks to rely on privilege, to provide a <u>Vaughn</u> index.[3]

Interrogatory No. 6 requests "details of all communications" between Asset Acceptance and D. Scott Carruthers "touching on the Kelly account . . . ."

Asset Acceptance objected that the request was vague as to the phrase "touching on . . . ," but provided some information to the interrogatory. Kellys argue Asset Acceptance has not answered fully and has failed to conduct any investigation before providing only a cursory answer.

The Court agrees that Asset Acceptance's response was inadequate. Clearly, there is non-privileged information available to provide, and to the extent Asset Acceptance seeks to withhold information under a claim of privilege, it must provide a <u>Vaughn</u> index. Therefore, Asset Acceptance must answer or provide Kellys with a privilege log.

Interrogatory No. 7 requests fee information existing between attorney Carruthers and Financial Credit. Asset Acceptance objected contending that the information is not relevant. The Court agrees and sustains the objection.

In <u>Request for Production No. 4</u>, Kellys seek a copy of "the entire contract, and any drafts thereof, between Asset Acceptance . . . and Fleet reflecting the purchase of the Kelly account, and any other assets which may have been acquired at or about the time the Kelly account was acquired." Kellys specifically wanted to know if an indemnification agreement existed.

---

[3]The term <u>Vaughn</u> index is derived from <u>Vaughn v. Rosen</u>, 484 F.2d 820 (1973), *cert. denied*, 415 U.S. 977 91974). It requires the party withholding information to provide an index to the opposing party, generally describing the document withheld, the date it was created, by whom it was created, to whom it was disseminated, and the nature of the privilege being asserted. Upon receipt of the index, the party may seek to challenge the withheld information by appropriate motion.

Asset Acceptance objected on grounds that it was over broad, burdensome and not likely to lead to admissible evidence. In addition, Asset Acceptance argued the discovery was confidential and proprietary.

The Court sustains the objection. Kellys' account appears to be one of thousands upon thousands of accounts that were acquired. Evidence of other accounts acquired or other assets purchased is irrelevant. The minimal benefit to Kellys is significantly outweighed by the burden, expense and disclosure difficulties imposed on Defendant. However, to the extent Asset Acceptance has documents that refer to or concern Kellys' account, those documents should be produced. The Court will also require production of any "hold harmless" and "indemnification" agreement that covers the Kellys' account.

In Request for Production No. 5, Kellys seek production of the articles of incorporation and bylaws of Asset Acceptance and Financial Credit. The Court sustains the objection. There is no apparent relevancy for this request and any arguable relevancy is outweighed by the burden, expense and privacy interests of Defendants. Moreover, these are public documents available from the appropriate state regulatory agency in the state where Asset Acceptance was incorporated. They are readily available to Kellys.

## Motion to Compel From Defendant Advanta Corporation - Doc. 75

In Interrogatory No. 2, Kellys ask Advanta Corporation ("Advanta") to "describe in detail the full extent of discussions and negotiations, whether oral, written or otherwise, that took place between Defendants Advanta Corporation and Fleet, or their agents, prior to Fleets becoming the successor-in-interest to Advanta. Include dates, persons attending or conducting discussion and issues or subjects discussed."

Advanta objected as the discovery request was over broad, burdensome and irrelevant.  The Court agrees.  While the relationship between Advanta and Fleet may arguably be relevant, Kellys asked for far too much.  Indeed, this interrogatory doesn't even relate to the present lawsuit. Discussions, if any, concerning Kellys' account may be relevant and discoverable, but, here, Kellys ask for every discussion of any kind or nature on virtually any topic.  This interrogatory is nearly impossible to answer.  Essentially, by asking for too much, as Kellys have done in this interrogatory, they get nothing.   A party runs the risk that if its discovery requests are so extraordinarily burdensome, as they are here, the Court may determine that no further responses be given.  Mackey, 167 F.R.D. at 197-98; Koch v. Koch Industries, Inc.; Burka v. U.S. Dept. of Health and Human Services.

In Interrogatory No. 4, Kellys request that Advanta "describe in detail what legal and/or financial liabilities Advanta understood Fleet to be assuming when it agreed to become successor-in-interest to Advanta.

Advanta objected relying on the trilogy of overly broad, burdensome and not relevant. Disclosure of financial dealings between these separate entities on matters that do not specifically relate to the account at issue are indeed over broad.  Had Kellys requested information concerning liability on this particular account, the Court's view might well be different.  Here, again, Kellys have asked for far too much and their demands for discovery are simply unreasonable.  The Court sustains Advanta's objections.

In Interrogatory No. 5, Kellys request that Advanta "describe in detail each and every step" which Advanta took with respect to disbursing funds on behalf of Kellys after it approved Richard Kelly's loan application.  It further sought a description of the manner in which the funds were tendered to another or others, who caused the funds to be tendered, who processed the tender, to

whom the tender was made, and requested the addresses used, if any, who determined the entity that was to receive the funds, which account Advanta directed should receive the funds, and who decided to what address those funds would be sent.   Kellys further request dates, names, address and job description.

Again, this type of far-reaching, overly broad discovery request makes it almost impossible for an opposing party to answer.   When an interrogatory or document request seeks "any and all" or "each and every" discussion or document, it is unreasonable on its face.   Franzon v. Massena Memorial Hosp., 189 F.R.D. 220, 222 (N.D.N.Y. 1999)(finding request over broad and not reasonably calculated to lead to the discovery of admissible evidence as request provides no meaningful limitations).   The Court understands that part of the dispute in this lawsuit concerns an amount of money, $8,500, that was purportedly credited to Kellys' account or to an account on behalf of the Kellys.   Clearly, what occurred in reference to that money is relevant and goes directly to Kellys' claims.   But, rather than asking narrowly tailored questions intended to get to the heart of the parties' dispute, Kellys engage in an expensive, and for most part, meaningless effort to find out inconsequential matters.   The result of Kellys' attempt to discover totally irrelevant information, i.e., job descriptions, addresses, the name of the clerk who processed the tender, etc., is that the Kellys never got to the real points at issue.   While the Court could well sustain the objection in its entirety because of the over breadth of this interrogatory, the Court believes that such a ruling would deny Kellys basic information concerning a key issue in this case, that is, how the amount allegedly borrowed by the Kellys and applied to other debts on other accounts was handled.   Advanta's response fails to provide any information concerning this key issue.

Accordingly, the Court will require Advanta to produce its evidence concerning what loan or credit card the Kellys allegedly applied for, whether it was approved, whether funds were issued

pursuant to the loan application and how and to whom funds were disbursed. If the funds were paid, when and to whom, and what paper documents evidence Advanta's responses.

In <u>Interrogatory No. 6</u>, Kellys ask for actions taken by Advanta upon receiving Richard Kelly's rejection of the loan. They also request information on dates, names, addresses, title description, time spent and identification of any and all persons involved in any way with processing this matter.

In response, Advanta states that it did not make a loan to Mr. Kelly and denies it was obligated to take any action requested.

The Court sustains in part and overrules in part the objection. While Advanta states that it did not make a loan to Richard Kelly, it does not state what action it took in reference to his application, or what action, if any, it took as a result of the review of his application or return of credit cards. If it did not make a loan, did it transfer balances on credit card consolidation or did it direct payments of money to satisfy Kellys' other financial obligations. As before, the Court believes that this information is relevant to the claims and defenses, and requires to Advanta to better explain its position.

<u>Interrogatory No. 7</u> asks Advanta to describe in detail the records it created "touching on or concerning" its efforts to collect funds from Kellys. Advanta was further directed to describe the contents of each record, including destroyed records, and to provide detailed information regarding each destroyed record.

Advanta responded by referring Kellys to the documents being produced. Kellys argue that the documents produced are full of "cryptic notes and abbreviations" and that Advanta failed to supply information about destroyed records.

The Court sustains the objection as Rule 33(d) provides the option of producing business

records in response to some interrogatories.  Fed. R. Civ. P. 33(d).  While Kellys contend the records

are cryptic, they fail to demonstrate with any specificity how the burden of extracting the requested

information from the documents is not substantially equal for either party.

Interrogatory No. 8, requests the name, address, and title of any person having anything to

do in any way with Advanta or Advanta's agents to collect funds, including names of supervisors, and

requests detailed information on the actions of each person, including dates, times and actions taken

on certain dates and times.

The Court sustains Advanta's objections as the interrogatory is overly broad and burdensome

and the arguable relevance of the information is far outweighed by the burden of a response.

In Interrogatory No. 9, Kellys request description of job duties of various employees for a 5-

year period.

The Court sustains Advanta's objections to this interrogatory, finding that the information is

not relevant to the claims or defenses, and that the production of the information would not lead to

the discovery of relevant, admissible evidence.

In Interrogatory No. 10, Kellys request a list of the name, address and title of all persons

involved in the investigation of their claims that they never received funds from Advanta.  This

interrogatory also requests Advanta to describe "in detail the actions each person took, including

dates, times and what actions were taken on such dates and times."

In response, Advanta referred Kellys to the documents it was producing.  Kellys again argue

generally that the documents produced are cryptic and intelligible only to Advanta.

The Court sustains the objection as to disclosure of name and addressed of all persons

involved, but does require Advanta to explain what it did to investigate claims that Kellys owned no

money.

In Interrogatory No. 11, Kellys request information on whether Advanta conducted a fraud investigation or other investigation on this account and on the transmittal of funds on behalf of the Kellys. If an investigation was conducted, Kellys requested information on why it was conducted and particulars of the investigation.

The information sought, including the subparts, is relevant in part and not relevant in other parts. It is appropriate to determine whether Advanta conducted an investigation on the account and the claimed transmittal of funds on behalf of Kellys. Information on when the investigation was conducted is appropriate, as well as information concerning who conducted the investigation. The Court will not require address, title and job description, names of supervisors, supervisors' addresses, titles or descriptions, nor the addresses titles or job descriptions of those to whom the results of the investigation were communicated, nor will the Court require disclosure of "each and every" step taken or of "any and all" activities. Advanta should disclose the results of any in-house investigation it took.

In responding to this interrogatory, the Court is not requiring information about the investigation undertaken by Advanta's counsel as part of this litigation process or any other attorney-client or attorney work-product protected investigations.

In Interrogatory No. 12, Kellys request complete details of any communication with respect to the subject of this litigation which any Advanta employee had anywhere with Norwest Financial. The request includes sub-requests for identity of persons communicating, dates, times, and complete details of each communication.

Kellys' request is overly broad. The request was not narrowly tailored concerning communications with reference to the account, but to the litigation in general, and, as such, would include communications with counsel, litigation strategy, settlement proposals and other matters. By

20

making the demand far too broad, Kellys ran the risk that the Court would sustain the objection as it does here. Mackey v. IBP; Koch v. Koch Industries, Inc.; Burka v. U.S. Dept. of Health and Human Services.  No further response to this interrogatory is required.

In Interrogatory No. 14, Kellys request information concerning actions taken by Advanta to recover monies disbursed on behalf of Kellys from anyone besides Kellys, and specifically request details on dates, times, names, titles, job duties of people involved.

Advanta responds that the answers to this interrogatory are found in the documents produced. This is an option authorized by Rule 33(d).  Thus, the Court sustains the objection in part and overrules it in part.  Advanta must disclose information concerning what steps it took to recover the monies disbursed or allegedly disbursed on behalf of Kellys.  The Court will not require disclosure of job titles, job descriptions, job duties, times of day, etc.  The intent here is to provide Kellys with information which Advanta will rely upon in support of its defense, that is, the explanation of what it did in reference to the claimed transfer of monies to some third person or entity on behalf of Kellys.

In Request for Production No. 5, Kellys seeks copies of all manuals, procedures or policies used by employees in internal efforts in collecting or attempting to collect funds.  The requests contains many sub-requests concerning internal efforts at collecting funds, including what happens when a creditor informs Advanta of mistakes, when a creditor informs Advanta that it is refusing the extension of credit, or when funds are disbursed in error or when errors are committed, and when an investigation is conducted.

The Court will not require production of all Advanta's collection manuals and/or operating procedures.  However, to the extent Advanta has policies and procedures responsive to the claims arising in this case, those portions of the policies or procedures should be made available to Kellys for inspection.  Advanta's objection that this information is not relevant is overruled.  If Advanta

violated its own internal policies and procedures on how it handled the alleged debt collection in this case, that information is relevant to Kellys' claims. Accordingly, the Court overrules the objection in part and requires Advanta to make available those relevant policies and procedures.

In <u>Request for Production No. 8</u>, Kellys seek copies of any indemnification and/or hold-harmless agreements existing between Advanta and Fleet. Kellys assert that the existence of such agreements may serve as an explanation as to why a more thorough job was not performed in determining whether the Kellys did or did not owe funds.

The Court will order production of any indemnification agreement between Advanta and Fleet if that agreement covers the Kellys account.

### Motion to Compel From Defendant Fleet Credit Card Services - Doc. 77

<u>Interrogatory No. 2</u> requires discussion in detail of "the full extent of discussions and negotiations, whether oral, written, or otherwise, that took place between Defendants Advanta Corporation and Fleet, or their agents, prior to Fleet Credit Card Services becoming the successor-in-interest to Advanta. Include dates, persons attending or conducting discussions and issues and/or subjects discussed."

The Court sustains Defendant's objections. This interrogatory fails to touch on the issues raised by the claims and defenses, and it is overly broad and burdensome.

<u>Interrogatory No. 4</u> seeks detailed information of the legal or financial liabilities Fleet understood it was assuming as successor-in-interest.

The Court sustains Fleet's objections as the interrogatories are over broad, burdensome and seek information that is simply not relevant to the claims and defenses.

Defendant Fleet Credit Card Services, LP ("Fleet") correctly notes that this lawsuit concerns a single account, that Fleet purchased from Advanta a large portfolio of tens of thousands of

accounts, and that there were no discussions whatsoever concerning Kellys' account. Notwithstanding this information, Kellys seek each and every detail on each and every discussion, apparently on any topic whatsoever.  This is an example of the type of discovery abuses that compelled Congress and the courts to modify the broad unlimited discovery previously utilized in federal court.  The Court sustains the objections.

Similarly, the Court will not require production of information concerning financial obligations Fleet understood it was assuming.  The request is not relevant.

Interrogatory Nos. 3 and 16, and Request for Production Nos. 7, 8 and 9. These discovery requests all seek information on indemnification or hold-harmless agreements.  As before, the Court found some relevancy in these agreements.  To the extent that such agreements existed and would indemnify one party for acts of another in relation to the Kellys account, the Court ordered production.  So, too, here.  If there are indemnification or hold-harmless agreements between Advanta and Fleet which relate to Kellys account, the Court orders production.

Interrogatory Nos. 6, 7, 8, 9, 10 and 11.  Interrogatory No. 6 concerns the records created by Fleet relating to Kellys account, but Fleet responded that it already produced all documents it has responsive to this interrogatory.  The Court will not require a further response.

In Interrogatory No. 7, Kellys wish the name, address and title of any person having to do with any effort to collect funds, including names of supervisors and statements concerning action dates and times when action was taken.

Kellys' request is broad and burdensome.  For example, information on names of supervisors, job titles, times of day, etc. are simply irrelevant.  Notwithstanding that, Fleet submitted information showing dates on which collection letters were sent and provided those letters to Kellys.  The Court determines that Fleet's objections are well-taken and will be sustained.

Interrogatory No. 8 is similar to Interrogatory No. 7.  However, in this interrogatory, Kellys request information concerning claims that they never received funds from Advanta and/or Fleet, and information concerning any investigation which Fleet undertook.

Fleet responds that it has already provided this information in documents.  However, this is an option under Fed. R. Civ. P. 33(d).  Fleet should respond to the interrogatory and describe what steps it took, if any, to investigate the Kellys' claims that they never received funds.  The Court will not require disclosure of supervisors, dates, times of day or "each and every" step taken.  It will suffice if Fleet states, under oath, what steps it took to investigate the Kellys' claims that they had not received funds.  The Court will sustain the objection concerning additional documents.

The Court reviewed Interrogatory No. 9 and the response and determines that the response was appropriate.  The Court does not require a further response to Interrogatory No. 9.

Interrogatory No. 10 requests "complete details of any communication, with respect to the subject matter of this litigation, any employee or agent Fleet had with Norwest Financial in Santa Fe or with any Norwest branch or any home office anywhere."  The request is for names, dates, times and complete details.

Requests for any and all communications or any and all steps taken such as this are overly broad and courts have frequently held that these types of interrogatories are improper.  Horizon Holdings, L.L.C. v. Genmar Holdings; IBP, Inc. v. Mercantile Bank of Topeka.  The Court sustains Fleet's objections.

Interrogatory No. 11 suffers from the same infirmity as Interrogatory No. 10, and for the same reasons stated above, the Court sustains Fleet's objections.

Interrogatory No. 12 seeks detailed information between Phillips and/or Adam S. Cohen requiring disclosure of the nature of their business relationship, the kind of work the attorneys

24

perform, the total amount of business performed with Fleet every year, details of payments, and payment agreement and efforts to collect from Kellys.

Most of the information requested is simply not relevant.  Had Kellys sought information concerning their claims, the Court would have ordered it produced, but information concerning the financial arrangements, amount of work performed, etc., are not relevant to the claims or defenses in this case.  Any arguable relevancy is significantly outweighed by the burden, hardship and invasion of Fleet's privacy.  Koch v. Koch Industries, Inc.; Burka v. U.S. Dept. of Health and Human Services.  The Court sustains Fleet's objections.

The Court reviewed Interrogatory No. 14 and response and determines that the response was appropriate.  No further response is necessary to this interrogatory.

In Interrogatory No. 17, Kellys request information on all disclosures Fleet made to Asset Acceptance concerning the Kellys' account, and all inquiries Asset Acceptance made to Fleet concerning the account prior to Asset Acceptance becoming the successor-in-interest; and in Request for Production No. 4 Kellys ask for manual, procedures or policies that Fleet uses "or should use" in internal collection attempts.

Fleet objected on grounds that the request was overly broad, unduly burdensome and irrelevant.  In addition, it claimed the discovery was confidential and proprietary.

Fleet objected, stating that the request is over broad, burdensome and seeks information that is not relevant.  However, in this interrogatory Kellys at least sought to limit the disclosures to this specific account.  Thus, the Court determines that the request is relevant, and will require Fleet to provide information concerning disclosures and inquiries specifically related to the Kellys' account.

The Court will require a response concerning what disclosures Fleet made to Asset Acceptance relating to the Kellys' account.  The Court will not require production of all policy or

collection manuals.  However, to the extent that policy or collection manuals touch on or direct how the Kellys' account should have been managed, then that portion or those portions of the manual should be made available for Kellys' inspection.

The Court directs that all information which was ordered produced and all interrogatories which the Court ordered answered and all documents which were ordered to be produced be produced or answered within fifteen calendar days.

The Court denies Kellys' multiple requests for sanctions, as well as their requests for costs and fees.

The Court recommends that Kellys tone down their accusations and frequent requests for sanctions.  Effective advocacy can be achieved without *ad hominem* attacks.

Lorenzo F. Garcia
Chief United States Magistrate Judge